UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LONA LEE COLHOFF,<br><br>              Movant,<br><br>      vs.<br><br>UNITED STATES OF AMERICA,<br><br>              Respondent. | 5:16-CV-05081-KES<br><br>REPORT & RECOMMENDATION |

## INTRODUCTION

Movant, Lona Lee Colhoff, has filed a *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.  See Civ. Docket Nos. 1 & 5.[1]  The government moves to dismiss Ms. Colhoff's motion without holding an evidentiary hearing.  See Civ. Docket No. 14.  Ms. Colhoff has not responded to the motion despite its having been pending for over two months.  This matter was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) & (B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, district judge.  The following is this court's recommended disposition of Ms. Colhoff's motion.

---

[1] This opinion refers to documents filed in Ms. Colhoff's civil § 2255 motion ("Civ."), as well as documents filed in her underlying criminal action, United States v. Colhoff, 5:14-cr-50050-KES-3 ("CR").

## FACTS

Ms. Colhoff was indicted on May 20, 2014, along with co-defendants Pablo Blue LeBeau and Twila LeBeau.  See CR Docket No. 1.  She was charged with conspiracy to distribute cocaine and conspiracy to distribute marijuana. Id.  Ms. Colhoff and her two codefendants were charged in a larger conspiracy, prosecuted in several separate indictments, in which Ms. Colhoff's brother, Gerald LeBeau, was alleged to be the leader.  One of those codefendants charged by separate indictment was Susan Schrader.  See United States v. Schrader, CR 14-50049 (D.S.D.).

Ms. Colhoff made her initial appearance on the indictment in her case on May 30, 2014, at which time attorney Paul Winter was appointed to represent her.  See CR Docket No. 24.  Ms. Colhoff was released on pretrial release at the conclusion of this hearing.  See CR Docket No. 19.

On December 17, 2014, the government filed a motion to revoke Ms. Colhoff's bond.  See CR Docket No. 75.  The government alleged Ms. Colhoff had spoken to a government trial witness, Brady Ferguson, in the related drug case of United States v. Schrader, CR 14-50049, while both Mr. Ferguson and Ms. Colhoff were sitting by themselves in the waiting area of the United States Attorney's Office.  See CR Docket No. 75-1.  Mr. Ferguson told the government that Ms. Colhoff called him a "snitch" several times, and also told him "snitches get stitches."  Id.

On February 18, 2015, a superseding indictment was entered against Ms. Colhoff alleging a third crime, witness tampering.  See CR Docket No. 97. The indictment alleged that Ms. Colhoff had endeavored to intimidate, threaten, or corruptly persuade a witness, Brady Ferguson, not to testify in the Schrader trial on December 17, 2014.  Id. at p. 2.  This was the same factual basis as the government had previously asserted in its motion to revoke Ms. Colhoff's pretrial release.

A jury trial began in Ms. Colhoff's case on April 7, 2015.[2]  See CR Docket entry between Docket Nos. 125 & 126.  The trial concluded on April 9, 2015, with a jury verdict of guilty on all three charges.  See CR Docket No. 133.

Ms. Colhoff was sentenced on July 31, 2015.  She received 45 months' imprisonment on each of the three counts of conviction, each sentence to run concurrently.  See CR Docket No. 164.  She timely appealed.

Before the Eighth Circuit, Ms. Colhoff argued the district court had erred by combining her drug conspiracy charges with her witness tampering charge in the same trial.  See United States v. Colhoff, 833 F.3d 980, 982 (8th Cir. 2016).  As to the witness tampering conviction, Ms. Colhoff also argued there was insufficient evidence to convict her and her statements to the witness were

---

[2] Ms. Colhoff was tried alone.  Codefendant Twila LeBeau had previously entered into a plea agreement on November 21, 2014.  See CR Docket No. 61. Codefendant Pablo LeBeau quickly followed suit by entering into his own plea agreement on December 10, 2014.  See CR Docket No. 69.  Thus, Ms. Colhoff was the "last 'man' standing" in her case when she went to trial.  Twila, who was Ms. Colhoff's sister, testified against Ms. Colhoff at Ms. Colhoff's trial.  See CR Docket No. 186 (Jury Trial Transcript—"JT") at pp. 65 et seq.

3

protected by the First Amendment's freedom of speech protections.  Id.  The court noted that the Schrader prosecution, in which Mr. Ferguson was to testify, was interrelated with Ms. Colhoff's case—both involved drug conspiracies in which the respective defendants were supplied with their drugs by Ms. Colhoff's brother, Gerald LeBeau.  Id. at 983.  The court held where the witness tampering is factually interrelated with the proceeding in which the defendant attempted to interfere, joinder is appropriate.  Id.

Ms. Colhoff's sufficiency-of-the-evidence argument centered specifically on the idea that the government had failed to adduce sufficient evidence to prove Ms. Colhoff acted with the intent to influence, delay or prevent Mr. Ferguson's testimony in the Schrader trial.  Id. at 984.  The court found sufficient evidence of intent:  Mr. Ferguson was subpoenaed to the United States Attorney's Office to prepare for the Schrader trial, Ms. Colhoff was present because her brother (Tuck LeBeau) was also subpoenaed for the same trial and Ms. Colhoff transported him.  Id.  Therefore, the jury could reasonably conclude Ms. Colhoff knew why Mr. Ferguson was in the United States Attorney's Office.  Id.  Furthermore, the statement "snitches get stiches" was specifically made in the context of a diatribe about Native Americans like Mr. Ferguson turning against their own people by assisting the federal government.  Id.

As to Ms. Colhoff's constitutional argument, the court held her use of the phrase "snitches get stitches" was a "true threat" and not mere political

4

expression.  Id. at 984-85.  The statement was therefore not protected by the First Amendment because threats of violence constitute unprotected speech under that amendment.  Id.  The district court was affirmed.  Id. at 986.

The Eighth Circuit's decision was issued August 19, 2016.  Id. at p. 980. Ms. Colhoff timely filed the instant motion under 28 U.S.C. § 2255 on September 8, 2016.  See Civ. Docket No. 1.  In her initial motion and her supplement to that motion, Civ. Docket No. 5, Ms. Colhoff raises the following claims for relief:

1. The district court should have applied Amendment 794 "retroactively" to her United States Sentencing Guidelines (USSG) calculation and reduced her base offense level for being a minor or minimal participant in the criminal activity.

2. Ineffective assistance of counsel as follows:

    a. Counsel did not consult with Ms. Colhoff about trying to have the witness tampering charge severed from the drug conspiracy charges.

    b. Counsel did not call [unspecified] witnesses to verify Ms. Colhoff's side of the story.

    c. As to the tampering charge, counsel did not prepare any video or talk to any witnesses that were there.

5

       d.  Counsel did not talk to Ms. Colhoff more about her case,

           assumed that she wanted to go along with his choices, and took

           3 to 4 days to respond to Ms. Colhoff's phone messages.

See Civ. Docket Nos. 1 & 5.

The government moves to dismiss Ms. Colhoff's § 2255 motion without holding an evidentiary hearing. See Civ. Docket No. 14. The government argues Ms. Colhoff has failed to state a claim for which relief may be granted. See Civ. Docket No. 15. As previously noted, Ms. Colhoff did not respond to the government's motion.

## DISCUSSION

**A.    Scope of a § 2255 Motion**

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners. Davis v. United States, 417 U.S. 333, 343-44 (1974). Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presented logistical issues because the record in the underlying criminal case were often in a distant location. United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court. Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a

constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255.  Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255.  Relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001).  When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either:  (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner.  Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749.  Therefore, barring a claim of actual

7

innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here.  See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

**B.      Amendment 794 Claim—Civ. Docket No. 1**

**1.      Background on Amendment 794**

It is helpful before analyzing Ms. Colhoff's claim to understand what Amendment 794 is and how it fits into the sentencing scheme of the USSG. Amendment 794 went into effect on November 1, 2015, approximately three months after Ms. Colhoff was sentenced.  It amended the commentary to USSG § 3B1.2, dealing with decreases in a defendant's base offense level.  Section 3B1.2 directs courts to subtract four points from the base offense level if the defendant was a "minimal" participant in the criminal activity, to subtract three points if the defendant's level of participation was between "minimal" and "minor," and to subtract two points if the defendant was a "minor" participant.

8

<u>See</u> USSG § 3B1.2.  The commentary to § 3B1.2 provides that the mitigating

role adjustment is available to any defendant whose level of participation made

him or her less culpable than the average participant in the criminal activity.

<u>Id.</u> cmt. 3(A).

Amendment 794 did not change the text of § 3B1.2, but instead amended

only the application notes to the section by introducing a non-exhaustive list of

factors for the district court to consider when determining whether to apply

§ 3B1.2.  <u>United States v. Gomez-Valle</u>, 828 F.3d 324, 327 (5th Cir. 2016).  The

amendment was intended to clarify § 3B1.2; it was not a substantive

change.  <u>Id.</u>

> Previously, application note 3(C) to § 3B1.2 read as follows:
>
> The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

<u>See</u> USSG § 3B1.2, cmt. 3(C) (2014).

The current application note 3(C) to § 3B1.2 contains the same

introductory sentence, with the following additional material:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
> (i)    The degree to which the defendant understood the scope and structure of the criminal activity;
> (ii)   The degree to which the defendant participated in planning or organizing the criminal activity;
> (iii)  The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)     The degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative.  Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

See § 3B1.2, cmt. 3(C) (2015).

Ms. Colhoff asserts in her § 2255 petition that Amendment 794 entitles her to a reduction in her USSG base offense level because she was a minor participant.  See Civ. Docket No. 1.  Generally, a sentencing court is required to use the version of the USSGs which are in effect at the time of sentencing. Dorsey v. United States, 132 S. Ct. 2321 (2012); USSG § 1B1.11(a). Ms. Colhoff was sentenced on July 31, 2015.  Amendment 794 went into effect on November 1, 2015.  Therefore, the Amendment was not in effect at the time of Ms. Colhoff's sentencing.  If it is applicable to her, Amendment 794 would have to apply retroactively.

## 2.    Ms. Colhoff's Amendment 794 Claim is Procedurally Defaulted

As explained above, a claim other than a claim of ineffective assistance of counsel must be raised on direct appeal or it is procedurally defaulted.

<u>Frady</u>, 456 U.S. at 167-68; <u>McNeal</u>, 249 F.3d at 749.  When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either actual innocence or that the procedural default should be excused because there was both cause for the default and prejudice to the petitioner.  <u>McNeal</u>, 249 F.3d at 749.

Ms. Colhoff filed a direct appeal, but did not raise the issue of the application of Amendment 794, or USSG § 3B1.2, in her appeal.  Her claim that the district court should have given her the benefit of a reduction in her USSG calculation for having a "minor" role as clarified by Amendment 794 could have been raised in her direct appeal.  Her failure to raise the "minor" role issue means that she has procedurally defaulted this claim.

Therefore, Ms. Colhoff must show both cause for why she failed to raise this issue on direct appeal as well as actual prejudice.  Because Ms. Colhoff did not respond in any way to the government's motion to dismiss, and cause and prejudice are not addressed in her § 2255 motion or the supplement thereto, she has not shown cause and prejudice.  For this reason, the court recommends dismissal of Ms. Colhoff's Amendment 794 claim with prejudice.  <u>Armstrong v. Iowa</u>, 418 F.3d 924, 926-27 (8th Cir. 2005) (dismissal with prejudice is appropriate where the ground for dismissal is procedural default).

### 3.    Ms. Colhoff's Amendment 794 Claim is Not Cognizable Under § 2255

In any case, a § 2255 motion is not the proper vehicle to ask the district court to apply the Amendment 794.  Section 2255, as discussed above, is only available for relief where "the sentence was imposed in violation of the Constitution or laws of the United States," "the court was without jurisdiction to impose such sentence," or for errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  See 28 U.S.C. § 2255; Hill, 368 U.S. at 428; Peguero, 526 U.S. at 27-30.  Here, failure to apply Amendment 794 did not render Ms. Colhoff's sentence unconstitutional, in violation of a federal law, nor did it deprive the court of jurisdiction.  Failure to apply the amendment also cannot be said to be a fundamental defect resulting in a complete miscarriage of justice.

Arguably, the amendment worked no change at all.  Gomez-Valle, 828 F.3d at 327 (Amendment 794 is not substantive, but only clarifying).  Prior to the amendment, courts were instructed to look at the totality of circumstances in determining the applicability of USSG § 3B1.2.  After the amendment, the instruction to sentencing courts is the same—look at the totality of circumstances—but the Sentencing Commission now sets forth a list of examples to consider.  The list of examples is necessarily "non-exhaustive" because the test continues to be "totality" of the circumstances—that is, all

12

relevant facts.  No list of examples could possibly include all the circumstances that might be relevant in all cases coming before federal district courts.

Many courts which have addressed this issue concluded that an argument that Amendment 794 should apply to one's case does not state a cognizable claim under § 2255.  This court has found no decision from any court holding to the contrary.  See United States v. Bazaldua, 2016 WL 5858634 at **1-2 (D. Minn. Oct. 5, 2016) (claim that Amendment 794 should be applied does not state a claim under § 2255);  Kelly v. United States, 2016 WL 5660761 at ** 1-2 (S.D. Ga. Sept. 28, 2016) (claim that Amendment 794 should apply did not render Kelly's sentence fundamentally unfair or a miscarriage of justice sufficient to provide relief under § 2255 because Amendment 794 did not work a substantive change); Altman v. United States, 2016 WL 5219599 at * 2 (N.D. Iowa Sept. 21, 2016) (argument that Amendment 794 should be applied to one's sentence calculation under the USSG does not state a claim under § 2255); and United States v. Valencia, 2016 WL 4491848 at * 2 (E.D. Wa. Aug. 25, 2016) (claim that Amendment 794 should apply is not cognizable under § 2255).

Ms. Colhoff relies upon United States v. Quintero-Leyva, 823 F.3d 519 (9th Cir. 2016).  In that case, Norberto Quintero-Leyva pleaded guilty to importing methamphetamine and was sentenced approximately one year prior to the issuance of Amendment 794.  Id. at 521.  At the time Amendment 794 became effective, Quintero-Leyva's case was pending on direct appeal before

the Ninth Circuit—just like Ms. Colhoff's situation. Id. At his sentencing, Quintero-Leyva had not received any reduction in his base offense level under the USSG for playing a minor role in the criminal activity pursuant to USSG § 3B1.2. Id. The court held Amendment 794 would apply retroactively to cases on direct appeal, but advanced no opinion whether it would apply to cases once an appellate decision had been issued. Id. at n.1. The Ninth Circuit's holding in Quintero-Leyva is inapposite to Ms. Colhoff's case—she appears before the court on *collateral review*, **not** on *direct appeal*. This court has found no case from any court applying Amendment 794 to cases on collateral review. Amendment 794 does not supply grounds for granting Ms. Colhoff's § 2255 motion.

Even assuming one could state a claim for relief under § 2255 by arguing that Amendment 794 should apply to one's case, such a claim would only be cognizable where the facts are such that failure to apply the amendment resulted in a complete miscarriage of justice. The court imagines such a case might be stated where the facts were overwhelming and entirely one-sided. Such is not the situation in Ms. Colhoff's case.

In order to show she was a minor participant in the drug conspiracies, the evidence would have to show Ms. Colhoff's participation was substantially less than the average participation of others in the conspiracies.[3] The PSR

---

[3] The court discusses only the drug conspiracy convictions. That is because, by definition, there must be at least two participants in a criminal activity

summarized the trial testimony as follows.  From 2005 to late 2010,
Ms. Colhoff was a user of cocaine.  See CR Docket No. 151 at p. 4, ¶ 6.
Beginning in 2011, Gerald LeBeau began to build his cocaine distribution
business, involving Ms. Colhoff and others to distribute.  Id. at ¶ 7.  Gerald was
the main source of supply for cocaine in Pine Ridge and in Ms. Colhoff's home.
Id.  Gerald used Ms. Colhoff's home in Custer, South Dakota, to store money,
cocaine, and marijuana.  Id.  He also used his own home and that of Susan
Schrader to store drugs and money.  Id. at pp. 4-5.

While Gerald was in jail in late 2011, he made several recorded phone
calls to Ms. Colhoff directing her to send others to go to Denver to obtain
resupplies of drugs and directing Ms. Colhoff to provide these others with the
necessary money for the drug run.  Id. at p. 5, ¶ 8.  Gerald was released from
jail in early 2012 and resumed using Ms. Colhoff's home for drug distribution,
including fronting up to ounce amounts of cocaine, and storing drug money,
cocaine and marijuana at her home.  Id. at ¶ 9.

Gerald was again arrested in January, 2014.  Id. at ¶ 10.  He again made
recorded phone calls to Ms. Colhoff from jail, asking Ms. Colhoff to contact
other members of the conspiracy to ask them why they were not answering
Gerald's phone calls.  Id.  He also had Ms. Colhoff send messages to others in
the conspiracy, to collect money from co-conspirators, and to collect drugs

---

before USSG § 3B1.2 comes into play.  In the tampering charge, Ms. Colhoff
was the only participant in the crime.  Therefore, § 3B1.2 is by definition
inapplicable to the tampering conviction.  See USSG § 3B1.2 cmt. 2.

from co-conspirators.  Id.  Gerald specifically asked Ms. Colhoff and her sister, Twila LeBeau, to collect a drug debt of $13,200 on his behalf.  Id.

Four co-conspirators testified at Ms. Colhoff's trial that they purchased up to ounce quantities of cocaine at Ms. Colhoff's home, either from Gerald or directly from Ms. Colhoff.  Id. at ¶ 11.  One co-conspirator testified to purchasing one pound of marijuana from Gerald at Ms. Colhoff's home.  Id.  That same witness testified Ms. Colhoff took the witness to Twila's home on one occasion to purchase one pound of marijuana.  Id.  When Gerald was arrested in 2012, Ms. Colhoff was the one who collected this co-conspirator's remaining money owed to Gerald and drugs she had not sold.  Id.

The above evidence shows that it was clearly Gerald LeBeau who was the kingpin of the twin drug conspiracies and the most culpable member of the conspiracy.  However, the test is not whether Ms. Colhoff was less culpable than *anyone* else; the test is whether she was *substantially* less culpable than the *average* participant in the conspiracy.  See USSG § 3B1.2 cmt. 3(A).  Here, that clearly was not the case.  Ms. Colhoff appears to have been one of Gerald's trusted right-hand women whom he relied upon to store drugs and money, help him distribute drugs and money, and collect drug debts.  Arguably, Ms. Colhoff qualified for an *enhancement* of her USSG base offense level based on her role as a manager or supervisor.  See USSG § 3B1.1.  Failure to accord Ms. Colhoff a reduction in her base offense level for being a minor or minimal participant in the drug conspiracies was not a miscarriage of justice.

16

### 4.    Amendment 794 Is Not Retroactive to Cases Under § 2255

As already discussed, § 2255 is not the proper vehicle for a claim that one should have been given a minor participant reduction in the USSG base offense level because such a claim does not demonstrate a fundamental miscarriage of justice.  The proper vehicle for one seeking to have a USSG amendment applied to one's case retroactively would be a motion pursuant to 18 U.S.C. § 3582.[4]  Section 3582(c)(2) allows a court to reduce a defendant's term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission *if the reduction is consistent with applicable policy statements by the Commission*.  <u>See</u> 18 U.S.C. § 3582(c)(2).

Section 1B1.10 defines what "policy statements by the Commission" are for purposes of a § 3582(c)(2) motion.  <u>See</u> USSG § 1B1.10.  The Sentencing Commission has stated:

> In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual *listed in subsection (d) below,* the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2).  As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.

<u>See</u> USSG § 1B1.10(a)(1) (emphasis supplied).  If the above was not clear enough, the Commission also stated:

---

[4] Ms. Colhoff clearly knew of the availability for relief under 18 U.S.C. § 3582(c)(2) because she previously filed a motion pursuant to that statute concerning application of Amendment 782 to the USSG.  <u>See</u> CR Docket No. 192.

17

> A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if—none of the amendments listed in subsection (d) is applicable to the defendant; . . .

<u>See</u> USSG § 1B1.10(a)(2)(A). Subpart (d) of § 1B1.10 does not contain a reference to Amendment 794. <u>See</u> USSG § 1B1.10(d) (2015 & 2016). Therefore, the policy of the Sentencing Commission is that Amendment 794 is not to be applied retroactively. <u>Id.</u>

The above discussion makes clear that even though § 3582(c)(2) is the only appropriate vehicle for Ms. Colhoff's motion, even a motion pursuant to § 3582 would be unavailing to Ms. Colhoff because Amendment 794 is not retroactive, because it is not listed in subsection (d) of USSG § 1B1.10. Therefore, even if this court were to liberally construe Ms. Colhoff's § 2255 motion as one filed pursuant to 18 U.S.C. § 3582, the court would still recommend the motion be dismissed.

Numerous courts which have been presented with § 2255 motions based on Amendment 794 have reached the same conclusion as this court does. <u>See</u> <u>Bazaldua</u>, 2016 WL 5858634 at **1-2 (D. Minn. Oct. 5, 2016) (claim that Amendment 794 should be applied does not state a claim under § 2255); <u>Kelly</u>, 2016 WL 5660761 at ** 1-2 (S.D. Ga. Sept. 28, 2016) (claim that Amendment 794 should apply did not render Kelly's sentence fundamentally unfair or a miscarriage of justice sufficient to provide relief under § 2255 because Amendment 794 did not work a substantive change); <u>Altman</u>, 2016 WL

18

5219599 at ** 1-3 (N.D. Iowa Sept. 21, 2016) (Amendment 794 cannot be applied retroactively on collateral attack or on a motion pursuant to 18 U.S.C. § 3582); <u>United States v. Pineda</u>, 2016 WL 4814804 at **1-2 (M.D. Fla. Sept. 14, 2016) (Amendment 794 does not apply retroactively to cases on collateral review); <u>United States v. Gillispie</u>, 2016 WL 5402781 at ** 2-3 (E.D. Ky. Aug. 26, 2016) (same); and <u>Valencia</u>, 2016 WL 4491848 at **1-3 (E.D. Wa. Aug. 25, 2016) (claim that Amendment 794 should apply is not cognizable under § 2255).

The only case to the contrary is <u>Quintero-Leyva</u>, discussed previously. As also noted previously, that case is inapposite because it was a case on direct appeal whereas Ms. Colhoff's case is before this court on collateral review. This court has found no case from any court applying Amendment 794 retroactively to cases on collateral review or in a § 3582 motion. Accordingly, because it is not retroactive to cases on collateral review, Amendment 794 does not entitle Ms. Colhoff to relief on her § 2255 motion.

## C.    Ineffective Assistance of Counsel Claims—Civ. Docket No. 5

### 1.    The **Strickland** Standard

As indicated above, because ineffective assistance of counsel claims will not usually be heard on direct appeal, the first and only place to raise them is in a collateral review proceeding like this one. See <u>Campbell</u>, 764 F.3d at 892-93; <u>Lee</u>, 374 F.3d at 654. Thus, the procedural default doctrine has no applicability to these claims.

19

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id.

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation.  Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009).  American Bar Association standards and similar directives to lawyers are only guides as to what reasonableness of counsel's conduct is, they are not its definitive definition.  Id.  The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result.  Porter v. McCollum, 558 U.S. 30, 41 (2009).  In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence 'both that adduced at trial, and the evidence adduced in the habeas proceeding' " and "reweigh it against the evidence in aggravation." Id. at 40-41.  It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability

21

sufficient to undermine confidence in [that] outcome." Id. at 44.  Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct.  Strickland, 466 U.S. at 698.

### 2.    Failure to Move to Sever Counts Prior to Trial

Ms. Colhoff alleges her counsel was ineffective for failing to talk to her about the witness tampering charge asserted in the superseding indictment and for failing to move to sever that charge before trial.  See Civ. Docket No. 5 at p. 4.

### a.    Failure to Move to Sever

Counsel for Ms. Colhoff filed an affidavit in this case addressing her allegations of ineffective assistance of counsel.  See Civ. Docket No. 11.  In that document, he states the reason he did not move to sever the charges was because he believed the government's evidence in the witness tampering charge was weak, while the evidence in the drug conspiracy charges was relatively strong.  Id. at pp. 2-3, ¶ 3.  His trial strategy was to try all three charges in the same trial, hoping that the weakness of the tampering charge would taint the jury's view of the evidence of the drug conspiracies.  Id.  Counsel communicated his trial strategy to Ms. Colhoff in a letter.  See Civ. Docket No. 11-1.  Thus, evidence shows counsel did discuss this matter with Ms. Colhoff.

As discussed above, matters of sound trial strategy are not grist for a Strickland claim.  Hall, 296 F.3d at 692.  Counsel's assessment that the witness tampering evidence was weak is somewhat corroborated by the magistrate judge's response to the government's motion to revoke Ms. Colhoff's pretrial release on this ground—even though the court found she had violated the terms of her bond, the court denied the motion to revoke bond, continued Ms. Colhoff on release, and amended the release order to reflect that Ms. Colhoff was to have no contact with any witnesses while out on release. See CR Docket Nos. 83 & 84.

Had counsel moved for severance, the Eighth Circuit's opinion in Ms. Colhoff's direct appeal demonstrates that such a motion would have been unavailing.  Colhoff, 833 F.3d at 983-84.  That is because Fed. R. Crim. P. 8 (addressing joinder) is broadly construed in favor of joinder and, when two charges are factually interrelated, such as a tampering charge with a witness in the underlying substantive offense, joinder is proper.  Id.  Ms. Colhoff's tampering charge was factually interrelated with the Gerald LeBeau drug conspiracy, of which her drug conspiracy charges and the Schrader case were both a part.  Therefore, there is almost no chance that a motion to sever charges prior to trial, had it been made by counsel, would have been granted. For this reason, Ms. Colhoff does not demonstrate prejudice as a result of counsel's failure to make the motion.  Hale v. Lockhart, 903 F.2d 545, 549 (8th

23

Cir. 1990) (counsel's failure to file a motion that has little chance of success
fails to meet <u>Strickland</u>'s deficient performance or prejudice requirements).

### b.     Failure to Discuss Tampering Charge

As to Ms. Colhoff's allegation that counsel did not discuss with her what
the government's evidence was on the tampering charge, counsel denies this in
his affidavit, stating he specifically remembers talking to her about the
elements of the charge, the alleged victim of the charge, the events surrounding
the charge, when and where it occurred, and whether there were any other
witnesses to what Ms. Colhoff said to the witness.  <u>See</u> Civ. Docket No. 11 at
p. 2.  But the court need not resolve this credibility issue between Ms. Colhoff's
allegations and counsel's.  The court takes judicial notice of the record in this
case and finds it refutes Ms. Colhoff's assertions.

At her bond revocation hearing, the government put on a witness, Special
Agent Preston Patterson, who related all the details of the charge.  <u>See</u> CR
Docket No. 83.  Even if counsel failed to tell Ms. Colhoff what the government's
evidence was against her on the tampering charge, *the government itself*
informed her of its evidence in open court.  <u>Id.</u>

The court has listened to the audio recording of the bond revocation
hearing conducted in Rapid City Courtroom #3 on December 18, 2014,
beginning at 9:30 a.m.  In that hearing, the court placed Ms. Colhoff under
oath.  The court then confirmed that Ms. Colhoff had received a copy of the
government's motion to revoke release as well as the accompanying report from

24

Special Agent Patterson.  <u>See</u> CR Docket Nos. 75 & 75.1.  Those documents, especially Agent Patterson's report, contained a detailed description of the witness tampering facts alleged by the government.  <u>Id.</u>

At the hearing Ms. Colhoff denied the alleged bond violation.  The magistrate judge advised Ms. Colhoff of the fact that tampering with a witness could be a separate crime.  The court told Ms. Colhoff the elements of the crime which the government would have to prove to show she committed the crime of tampering with a witness.  The court also advised her of the maximum penalties for that crime.  The court so advised Ms. Colhoff in the event she might wish to testify during the evidentiary hearing on the bond revocation motion.  The court cautioned Ms. Colhoff that she might be ultimately charged with tampering with a witness and, if she testified in the bond hearing, might be risking incriminating herself on a future criminal charge.

The government then submitted evidence to prove its case, calling Agent Patterson as its witness.  Agent Patterson testified that Brady Ferguson was waiting in the lobby of the United States Attorney's Office on December 17, 2014, waiting to speak with Agent Patterson.  Ms. Colhoff was also in the lobby waiting at the same time.  There were no other persons in the lobby.

When Agent Patterson met with Mr. Ferguson, Mr. Ferguson told Agent Patterson that Ms. Colhoff had directed several comments to him.  He stated that Ms. Colhoff called Mr. Ferguson a "snitch" several times, told him he was complying with the federal government's attempts to divide and conquer Native

25

American people, told him if Mr. Ferguson couldn't do the time he shouldn't have done the crime, and, finally, Ms. Colhoff told Mr. Ferguson "snitches get stitches."  Mr. Ferguson told Agent Patterson he perceived Ms. Colhoff to be threatening him, particularly the "snitches get stitches" comment.

On cross-examination by defense counsel, Agent Patterson clarified that there was one person, Kim Janis (Mr. Ferguson's aunt), who was present at the very end of the encounter between Ms. Colhoff and Mr. Ferguson.  However, Ms. Janis was not present during the "snitches get stitches" comment.  Agent Patterson also interviewed the receptionist at the United States Attorney's Office.  The receptionist did not hear or witness any part of the encounter between Ms. Colhoff and Mr. Ferguson.

Ms. Colhoff was in the United States Attorney's office on December 17 because she gave her brother, Tuck, who was also subpoenaed for the Schrader trial, a ride to the office.  Agent Preston testified that he personally heard Ms. Colhoff make comments to her brother to the effect Tuck should refuse to talk to Agent Patterson.  In Agent Patterson's hearing, Ms. Colhoff encouraged Tuck to "take the Fifth."

On the day in question, Agent Patterson testified Ms. Colhoff was in the lobby of the United States Attorney's Office for approximately one to one-and-one-half hours.  Ultimately, she was asked to leave because she was disrupting staff at the office.

26

The court found Ms. Colhoff had violated the condition of bond which required her to obey all laws.  The court found Ms. Colhoff had not violated the "no contact" provision of her bond because that condition only specified that Ms. Colhoff not have any contact with co-defendants.  Mr. Ferguson was not charged as a co-defendant.  The court re-released Ms. Colhoff on bond, but amended her conditions of release so that the "no contact" provision now also specified she not have contact with witnesses as well as co-defendants.

Based on the record before the court, this court recommends no relief be granted on this claim of ineffective assistance.  Even if Ms. Colhoff's assertion that her counsel never discussed the government's evidence against her on the tampering charge is taken as true, there is no prejudice.  At the bond revocation hearing, the court thoroughly advised Ms. Colhoff of the elements of the crime and the maximum penalty.  Then the government presented its evidence against her through live testimony, which Ms. Colhoff's counsel was able to cross-examine.  Therefore, Ms. Colhoff can claim no prejudice.  Counsel could not have informed Ms. Colhoff of more information than what Ms. Colhoff learned first-hand at this hearing.

Although a petitioner is entitled to an evidentiary hearing on a § 2255 motion unless the motion and the files and the records of the case conclusively show that she is entitled to no relief, no hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.  New v. United States, 652 F.3d 949, 954

27

(8th Cir. 2011) (quoting <u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 817 (8th Cir. 2008)).  The record affirmatively refutes Ms. Colhoff's allegations. Therefore, no evidentiary hearing is recommended either.

### 3.    Failure to Call Witnesses

The entirety of the second ground for ineffective assistance alleged by Ms. Colhoff in her § 2255 motion is as follows:

> Not calling witnesses
>
> I asked him to call witnesses to verify my side of the story and was told we didn't need to.

<u>See</u> Civ. Docket No. 5 at p. 5.

Where a habeas petitioner alleges counsel failed to call a witness at trial, to show <u>Strickland</u> prejudice, the petitioner must show the uncalled witness would have testified in her defense, that his or her testimony would have been favorable, and that the testimony "probably would have changed the outcome of the trial."  <u>See</u> <u>Lawrence v. Armontrout</u>, 900 F.2d 127, 130 (8th Cir. 1990); <u>Stewart</u>, 31 F.3d at 744.  In assessing ineffective assistance claims under the <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) standard, "[t]he decision not to call witnesses is a virtually unchallengeable decision of trial strategy."  <u>United States v. Staples</u>, 410 F.3d 484, 488 (8th Cir. 2005) (citations omitted, punctuation altered).  The habeas court must avoid "the distorting effects of hindsight and try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time."  <u>Id.</u> (citations omitted, punctuation altered).

Here, Ms. Colhoff does not even identify *who* the witnesses were she thinks counsel should have called. She also never identifies whether those witnesses would have been willing to testify for Ms. Colhoff and, if so, what they would have said. Finally, she fails to demonstrate how the witnesses' testimony would have had any potential to change the outcome of her trial. Specifically, the court notes at least five co-conspirators, including Ms. Colhoff's own sister, testified against her at trial. The government had audio recordings of conversations between Ms. Colhoff and her brother, Gerald, from jail discussing the conspiracy. The evidence was overwhelming on the drug conspiracy charges. The evidence on the tampering charge, discussed at length above, was similarly convincing. Furthermore, there were no witnesses to the tampering charge save Brady Ferguson and Ms. Colhoff herself.

Ms. Colhoff had two opportunities to demonstrate facts as to her claim of failure to call witnesses—both in her initial § 2255 motion, and again in response to the government's motion to dismiss. She failed to carry her burden. Accordingly, the court recommends no relief be granted on the failure-to-call-witnesses claim and that no evidentiary hearing be held.[5]

---

[5] Ms. Colhoff's trial counsel attempts to speculate what "witnesses" Ms. Colhoff might have had in mind when she made this allegation of ineffective assistance. The court chooses not to engage in such speculation. The burden is on Ms. Colhoff to adequately identify the witnesses she bases her claim on, what they would have testified to, and the fact that they would have agreed to testify for her. <u>Lawrence</u>, 900 F.2d at 130; <u>Stewart</u>, 31 F.3d at 744.

### 4.    Counsel Did Not Ask to See Evidence of Tampering

In her third claim of ineffective assistance of counsel, Ms. Colhoff states

the following:

> Didn't ask to see the evidence I was being charge with
>
> I got charge [sic] with tampering with a witness and found guilty
> because he didn't preserve any video or talked to witnesses that
> were there

See Civ. Docket No. 5 at p. 7.  This is the entirety of Ms. Colhoff's explanation

of this claim.

Counsel addresses this claim in his affidavit.  See Civ. Docket No. 11 at

pp. 4-5.  Trial testimony established that, although there was a camera in the

receptionist's area adjacent to the lobby in the United States Attorney's office,

there was no recording equipment hooked up to the camera; the camera was

used only for real-time observance of the area.  Id.  Counsel interviewed the

receptionist who had been working the day the tampering occurred; she did not

hear any of the conversation between Ms. Colhoff and Mr. Ferguson.  Id.

Although not addressed by counsel in his affidavit, the court notes that

Agent Patterson testified at the bond revocation hearing that one witness had

been present at the very end of Ms. Colhoff's encounter with Mr. Ferguson—

Mr. Ferguson's aunt, Kim Janis.[6]  However, as Agent Patterson also testified,

Ms. Janis did not overhear the relevant parts of what the government was

---

[6] Ms. Janis was also prosecuted in federal court for drug conspiracy charges.
See United States v. Janis, CR 12-50059.  The court is not aware whether she
was a co-conspirator in the Gerald LeBeau drug conspiracies.

alleging Ms. Colhoff said to Mr. Ferguson. Calling Ms. Janis to testify would not have altered the balance of evidence before the jury on the tampering charge.

The court concludes Ms. Colhoff has failed to show counsel's performance was deficient and failed to show counsel's allegedly deficient conduct prejudiced her. Accordingly, the court recommends no relief be granted on this ground to Ms. Colhoff under § 2255.

### 5.    Failure to Talk to Ms. Colhoff More About Her Case

Ms. Colhoff states for her fourth and final claim of ineffective assistance of counsel the following:

> Talked to [sic] more about my case
>
> He took it upon himself to assume that I wanted to go along with his choices in this matter and refused to call or answer my calls. It would be 3-4 days before he would respond.

See Civ. Docket No. 5 at p. 8.

Ms. Colhoff never explains which matters in particular she wanted counsel to consult with her on and which he did not. She never specifies what decisions counsel made about the handling of her case on which counsel failed to obtain her approval. The only allegation Ms. Colhoff makes with specificity is that counsel sometimes took three to four days before returning her calls.

Counsel acknowledged that sometimes it took him several days to respond to Ms. Colhoff's calls. See Civ. No. 11 at pp. 5-6. He explained that Ms. Colhoff would frequently call and make a specific factual inquiry. Id.

31

Counsel explained that the case had numerous co-defendants charged in numerous separate cases with hundreds of pages of discovery.  Id.  Before attempting to answer Ms. Colhoff's specific inquiry, he always endeavored to review the evidence first before calling her back so he could give her accurate advice and answers.  Id.  Neither Ms. Colhoff nor counsel ever assert that counsel failed altogether to return Ms. Colhoff's phone calls.  See Civ. Nos. 5 & 11.

Vague and conclusory allegations as to counsel's deficiencies are not enough to state a claim of ineffective assistance of counsel.  Spillers v. Lockhart, 802 F.2d 1007, 1010 (8th Cir. 1986) (petitioner's vague and conclusory ineffective assistance claims properly dismissed because petitioner did not allege any facts or specifics to identify how his counsel was ineffective). The court finds Ms. Colhoff's allegations in this claim to be too vague and conclusory to enable any meaningful analysis.  The court notes Ms. Colhoff has had two opportunities to tell the court the specifics of this and her other claims:  she had the opportunity to set her claims forth in clear and specific detail in her § 2255 motion originally, and she had an opportunity to set them forth in greater clarity in response to the government's motion to dismiss.  She failed in both these opportunities.  Accordingly, the court recommends no relief be granted Ms. Colhoff on this claim of ineffective assistance of counsel.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss [Civ. Docket No. 14] be granted and that movant Lona Colhoff's motion pursuant to § 2255 [Civ. Docket Nos. 1 & 5] be dismissed with prejudice without holding an evidentiary hearing.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See 28 U.S.C. § 636(b)(1)(B).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED January 27, 2017.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge